IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JERRY BRANDON,           )
           )
        Petitioner,        )
           )
    v.             )        Case No. 4:04CV00882 RWS (AGF)
           )
DON ROPER,            )
           )
        Respondent.     )

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pro se petition of Missouri state prisoner

Jerry Brandon for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action was

referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b) for recommended

disposition. Respondent argues that the petition should be dismissed as untimely under

the one-year statute of limitations of 28 U.S.C. § 2254(d)(1), and alternatively, that

Petitioner is not entitled to habeas relief. For the reasons set forth below, the Court

recommends that the petition be deemed timely, but that federal habeas relief be denied

on procedural and substantive grounds.

**PROCEDURAL SUMMARY**

On October 9, 1998, Petitioner was found guilty by a jury of first-degree murder,

rape, sodomy, and three related counts of armed criminal action. All the crimes were

perpetrated against one victim, Brenda Elkins, on the morning of February 1, 1997. The

jury rejected the State's request for the death penalty on the murder charge, and assessed

punishment for Petitioner, as a prior offender, at life imprisonment without the possibility of probation or parole for the murder, life for the rape, life for the sodomy, and 15 years for each of the armed criminal actions, with all sentences to run consecutively. On November 20, 1998, the court sentenced Petitioner accordingly. On January 11, 2000, the convictions and sentences were affirmed on direct appeal. On January 25, 2000, Petitioner filed a timely motion for rehearing and/or transfer in the Missouri Court of Appeals. See Mo. R. Civ. P. 83.02 and 84.17. This motion was denied on May 17, 2000.[1] Resp. Ex. F. There is no indication that within 15 days thereafter, Petitioner filed a motion to transfer in the Missouri Supreme Court itself, as allowed under Missouri Supreme Court Rule of Civil Procedure 83.04. Nor did Petitioner file a petition for a writ of certiorari in the United States Supreme Court. The Missouri Court of Appeals issued its direct appeal mandate on June 16, 2000. Id.; Pet. Ex. B to Reply (Doc. #10.2).

On September 6, 2000, Petitioner filed a motion for post-conviction relief in state court. Following an evidentiary hearing, the motion was denied, and this denial was affirmed on appeal on June 10, 2003.[2] Resp. Ex. K. On July 24, 2003, the Missouri Court of Appeals denied Petitioner's motion for rehearing and/or transfer to the Missouri Supreme Court. Resp. Ex. L.[3] On August 15, 2003, the Missouri Court of Appeals issued its post-conviction mandate. By letter dated November 12, 2003, the state Public

---

[1]    Respondent misstates this date as June 17, 2000. See Doc. #8 at 4.

[2]    Respondent misstates this date as March 25, 2003, and misidentifies the relevant exhibit as Resp. Ex. J. See id. at 5.

[3]    Respondent misidentifies the relevant exhibit as Resp. Ex. K.

Defender's office informed Petitioner that he had until August 15, 2004 (one year from the post-conviction mandate) to file a federal habeas petition. Pet. Ex. E to Reply. The present federal habeas action was signed on July 13, 2004, which the Court deems to be the filing date of the petition.[4] See Smith v. Roper, 2005 WL 2674942, at *2 n.1 (E.D. Mo. Oct. 20, 2005) (absent evidence to the contrary, the date upon which a habeas petitioner signed the petition is sufficient indicia of the date upon which the petitioner delivered it to prison authorities for mailing, which date, under the prison mailbox rule, becomes the date of filing). He claims that his constitutional rights were violated in the following nine ways:

> I. The prosecutor "perpetrated fraud upon the court" by providing Petitioner's counsel with a lab report indicating the absence of cocaine in Petitioner's blood tested soon after the crimes, when in fact the report pertained to another person, thereby depriving Petitioner of the opportunity to develop a defense based upon Petitioner's behavior at the time of the offenses being reckless and not deliberate, which would have supported a conviction of involuntary manslaughter as opposed to first-degree murder;

> II. (a) The trial court failed to declare a mistrial sua sponte, or take other curative action, when the prosecutor revealed at trial that the earlier-introduced lab report pertained to a different individual; and (b) The trial court abused its discretion in excluding Petitioner's blood expert from testifying, and in precluding Petitioner from obtaining a sample of his blood taken soon after the crimes, thereby preventing Petitioner from presenting an effective defense to first-degree murder;[5]

> III. There was insufficient evidence to support the murder conviction, because the state failed to prove beyond a reasonable doubt that Petitioner had deliberated before shooting the victim;

---

[4]    The petition bears a filed date of July 15, 2004.

[5]    Claims I and II as presented above are a combination of Claims I and II as presented in the petition. Respondent characterizes these claims somewhat differently.

IV.  There was insufficient evidence to support the rape conviction, because the state failed to prove beyond a reasonable doubt that the sex Petitioner engaged in with the victim prior to the sodomy and murder was by the use of forcible compulsion;

V.  The trial court's written response to a question by the jury constituted an improper "hammer instruction";

VI.  Petitioner's trial counsel failed to object to statements by the prosecutor during opening and closing statements that suggested that Petitioner had committed an uncharged assault against the victim;

VII.  Defense counsel failed to file a motion for a new trial;

VIII.  The prosecutor intimidated a key witness (Dwayne Bell) to commit perjury; and

IX.  Defense counsel failed to object to the prosecutor's inflammatory rendition of the facts during voir dire.[6]

Besides its statute of limitations argument, Respondent argues that review of claims I, II(a), and VIII is procedurally barred, as these claims were defaulted in state court, and that habeas relief should be denied as to the remaining claims because the state courts' adjudication of them was factually and legally reasonable.

## BACKGROUND

**Trial**

On February 11, 1998, Petitioner filed a motion for the State to provide him with a

---

[6]  In his supplemental traverse (Doc. #15), Petitioner conceded two claims which he had asserted in his petition: that in closing argument, the prosecutor made an impermissible indirect reference to Petitioner's failure to testify (Claim IX in the petition); and that the trial court erred in failing to take curative action sua sponte when the prosecutor elicited evidence of prior bad acts by Petitioner against the victim (Claim XI in the petition).  The claim labeled "Claim IX" above, appears in the petition as Claim X.

sample of his blood taken shortly after the charged crimes were committed. On Febraury 16, 1998, the State filed a "Second Motion to Exclude." The State asserted that on February 11, 1998, the defense had filed a motion to endorse witnesses, "some one month after the extended deadline." The proposed witnesses included Dr. Jonathan Lipman, a blood analysis expert, but according to the State, Petitioner did not include with his motion to endorse, a report by Dr. Lipman or a summary of his statements. By order dated February 27, 1998, the trial court denied Petitioner's motion for a blood sample, and also granted the State's motion to exclude Dr. Lipman from testifying as an expert. The court noted that the "blatant disregard" by the defense of the state disclosure rules and the court's pretrial orders, by naming an expert whose proposed testimony remained a mystery two months before trial and one month after the court's extended deadline, prejudiced the State. Exs. B, C, & D to Pet.

Trial began on September 28, 1998. During the death-qualification portion of voir dire, the prosecutor presented a factual summary of the case to each of the five separate venire panels. Each summary was essentially the same, with the following last version being representative:

> The State alleges and intends to prove in this case that Brenda Elkins, young woman, was at a certain location on Page Avenue on February 1, '97, that she and Mr. Brandon got involved in an oral argument, that later that argument started into a physical argument, that in the course of the physical argument, in defending herself, she pulled out a knife. She stuck Mr. Brandon a couple of times, a number of times with the knife.
>
> He took the knife away, marched her to a common bathroom in the building, where he forced her to have intercourse with him, and then he took her out of the bathroom, took her into another room, where he forced her to perform oral sex on him at knife point, and then he put down the

knife, picked up a .12 gauge shotgun, put it to her head and blew her brains
out, killing her.

Resp. Ex. A-1 at 500.

Defense counsel did not object. In his own opening statement, defense counsel
stated that it was clear that Petitioner "was responsible for the murder of [the victim]. He
held the gun, the gun over there, that blew her brain out. What the evidence also is, is
that he didn't intend to do it." Defense counsel then presented a version of the evidence
that was consistent with consensual sex rather than rape, and accidental homicide rather
than first-degree murder. Resp. Ex. A-2 at 768-72.

The State presented evidence that Petitioner, the victim, and at least two other
individuals, Dewayne Bell and Connie King, were together in Bell's apartment on the
morning of February 1, 1997, smoking crack cocaine and drinking alcoholic beverages.
Petitioner and Bell knew that King, who is a female, and the victim were lovers.
Petitioner and the victim got into an altercation, during which the victim pulled a knife on
Petitioner and cut him on his back. Petitioner got the knife away from the victim,
grabbing the blade in his right hand. He then forced the victim into the bathroom where
and had sexual intercourse with her. King heard the victim screaming for help and asked
Bell to go to the bathroom to intervene, but Bell did not do so. It was brought out that in
a statement to the police, Bell had stated that he heard noises from the bathroom which
sounded as if Petitioner was "whooping on" the victim. Photographs and a videotape of
the crime seen showed blood stains on the bathroom wall about six feet from the floor.

Approximately ten or fifteen minutes later, Petitioner emerged from the bathroom

with the victim, who was crying and scared.  Petitioner was holding the knife and made

the victim sit down and told her, "You're a female and I'm a male, bitch, and you need to

stay in a female's place because you're not a male."  He then forced the victim at knife

point to perform oral sex on him, after which Petitioner picked up from a bed a loaded

pump-action shotgun that Bell kept in the apartment.  Bell and King each asked Petitioner

to put the gun down.  Petitioner told the victim to stand up, which she did, raising her

hands above her head.  Bell testified that he could not remember whether the victim's

hands were clenched or not, adding that the prosecutor had asked him to testify that they

were clenched.  Bell also could not recall where the knife was at this point.  Petitioner

pointed the gun at the right side of the victim's head, and said to her, "I could kill you,"

according to Bell, or "I can kill you," according to King.  The victim asked Petitioner to

stop, but Petitioner pulled the trigger, and "blew her brains out."  Bell testified that

Petitioner did not rack the gun before shooting the victim; King testified that he did rack

the gun before shooting it.

Immediately after the shooting, Petitioner tried to hand the gun to Bell.  King,

hysterical, left the room.  Petitioner went after her and tried to stop her from leaving the

house, telling her that she needed to say that the shooting was self defense.  King ran out

of the house and asked someone to call the police.  Meanwhile, Petitioner cleaned off the

gun.  He then went outside and turned himself in to the police, who had arrived at the

scene.

The medical examiner who performed the autopsy on the victim's body testified

that the victim died of a shotgun wound to the head, with the shot entering from the right

side of the head and "evacuating most of the cranial vault." The end of the barrel of the shotgun was three to 15 inches from the victim's head at the time of impact. The medical examiner further testified that he found no evidence of injury to the victim's face, or of skin damage other than where the gunshot wound was, or of trauma to the victim's genitalia.

During the trial, defense counsel cross-examined the State's witnesses in an effort to inject the possibility that the shotgun discharged by accident as a result of Petitioner's intoxicated condition or some movement by the victim, and to inject doubt concerning the rape, which no one actually witnessed. Early in the trial, Pamela Ryan, a nurse, testified that in the early afternoon of February 1, 1997, she drew blood from Petitioner for the police at the hospital. She testified that she did not detect alcohol on Petitioner's breath, and that he was very clear and oriented. She testified, based upon a lab report, that the blood tested negative for cocaine. During cross-examination, defense counsel pointed out that the time and date on the lab report was 11:30 p.m., January 30 (1997). Ryan responded that the time on the report was "inaccurate." Id. at 833-39.

Shortly thereafter, the State recalled Ryan. She testified that she had just uncovered that the lab report she had previously relied upon did not pertain to Petitioner, and that the correct report showed that Petitioner's blood tested positive for cocaine (of an unspecified amount), and that his alcohol level was .199, twice that of a legally intoxicated person. The reason for the confusion was that both reports pertained to a "John Doe." Ryan reaffirmed her earlier testimony, however, that when she drew Petitioner's blood, she did not detect alcohol on his breath and he was oriented. Id. at

903-04.

During cross-examination of King, defense counsel asked her, "As far as you know, [the victim] had no reason to fear [Petitioner], right?" King responded, "Wrong." Resp. Ex. A-2 at 1111-12. On redirect, the prosecutor asked King what reason the victim had to fear Petitioner, and King responded that Petitioner was always harassing the victim and had beat her up once before. Id. at 1145. Defense counsel did not object. Petitioner did not testify on his own behalf.

In opening and closing argument, the prosecutor stated that Petitioner had beaten ("whooped on" and "beat on") the victim while in the bathroom. Defense counsel did not object. In closing argument, again with no objection by defense counsel, the prosecutor stated that the blood seen on the bathroom wall suggested that Petitioner had raised his bleeding hand to hit the victim. In Petitioner's closing argument, defense counsel again conceded that Petitioner killed the victim with the shotgun, but argued that it was not murder, because Petitioner lacked the intent to kill her. Counsel also faulted the State for the confusion over the lab report.

Petitioner's motion for judgment of acquittal at the close of the evidence was denied. With respect to the killing, the jury was instructed on first-degree murder (intentional killing with deliberation), second-degree murder (intentional killing without deliberation), felony murder (killing in connection with the sodomy), and involuntary manslaughter (reckless killing). The jury retired for deliberations at 1:55 p.m. on October 8, 1998, adjourned for the night at 5:25 p.m., and resumed deliberations at 9:15 a.m. the next morning. At approximately 11:30 a.m., the jury sent the following question to the

court: "[I]f the jury cannot come to agreement on a count (III and IV), would this be considered a mistrial?" Count III was the rape charge, and Count IV was the related charge of armed criminal action. With the assent of counsel for both sides, the court returned the following written answer to the jury: "[T]he Court can accept a unanimous verdict on any count. Please review Instruction No. 20."

Instruction No. 20 read as follows:

The defendant is charged with a separate offense in each of the six counts submitted to you. Each count must be considered separately.

You should return a separate verdict for each count and you can only return one verdict for each count.

Id. at 1366-74, Resp. Ex. B at 133. Approximately one hour later, the jury took a lunch break until 2:00 p.m. At 2:55 p.m., the jury returned its verdicts, finding Petitioner guilty on all counts.

Defense counsel did not file a motion for a new trial. Petitioner appeared for sentencing on November 28, 1998, at which time defense counsel acknowledged that he had not filed a motion for a new trial. Petitioner expressed confusion about the matter, but he did state that he knew counsel was not going to file such a motion. Resp. Ex. A-3 at 1601-18. On November 30, 1998, defense counsel filed a notice of appeal, and then withdrew as counsel.

**Direct Appeal**

Petitioner raised six points in his direct appeal, requesting plain error review as to

each of them.[7]  These claims included four claims now presented by Petitioner as grounds for federal habeas relief, namely, that the trial court committed plain error in (1) overruling Petitioner's motion for judgment of acquittal with regard to the rape charge and corresponding armed criminal action charge, because the evidence was not sufficient to establish forcible compulsion, an element of rape; (2) overruling Petitioner's motion for judgment of acquittal with regard to the murder charge and corresponding armed criminal action charge, because the evidence was not sufficient to establish deliberation, an element of first-degree murder; (3) failing to declare a mistrial sua sponte or take other curative action when it became known that the lab report that had been admitted into evidence did not pertain to Petitioner; and  (4) responding to the jury's question with an answer that did not contain proper cautionary language.  Resp. Ex. C.[8]

On October 29, 1999, direct appeal counsel filed a motion asking the appellate court to review all claims under the regular standard of review, rather than just for plain

---

[7]  Where a claim of error in a criminal case has been properly preserved for appellate review, the Missouri Court of Appeals will reverse a decision of the trial court if an abuse of discretion is found.  A claim of error that was not included in a motion for a new trial is not properly preserved for appeal, and appellate review of the claim is discretionary and only for plain error.  Plain errors are errors that are outcome-determinative and that are "evident, obvious and clear" and "so substantially affect a defendant's rights that a manifest injustice or a miscarriage of justice" would result if left uncorrected.  State v. Joos, 218 S.W.3d 543, 546 (Mo. Ct. App. 2007).  The defendant bears the burden of proving a manifest injustice or miscarriage of justice from a plain error.  Id.  To show plain error, the defendant must demonstrate more than mere prejudice; instead, the defendant must show manifest prejudice affecting a substantial right.  State v. Hoy,  219 S.W.3d 796, 810 (Mo. Ct. App.  2007).

[8]   The other two claims raised on direct appeal involve the two issues Petitioner has conceded in his supplemental traverse.

error.  Without ruling on this motion,[9] the state appellate court, on January 11, 2000, summarily affirmed Petitioner's convictions.  Resp. Ex. E.

**Post-conviction Proceedings**

In his amended motion for post-conviction relief, filed under Missouri Supreme Court 29.15, Petitioner argued that his trial counsel was ineffective in failing to file a motion for a new trial.  Petitioner asserted that this constituted abandonment by counsel at a critical stage of the proceedings, and prejudiced Petitioner because it limited him to plain error review on direct appeal.  Petitioner also argued that defense counsel was ineffective in failing to object to the State's rendition of the facts of the case during the death-penalty qualification portion of voir dire, and then stating in opening statement that Petitioner was responsible for the "murder," thereby conceding to the state's version of the facts and undermining any defense of consensual sex and accidental homicide or manslaughter.  Petitioner noted that there was no evidence to support the prosecutor's statement that the victim picked up the knife to defend herself.  Petitioner argued that but for defense counsel's deficient performance in this regard, Petitioner would not have been convicted of first-degree murder.

Petitioner next argued that defense counsel was ineffective in failing to object to the comments by the prosecutor during closing argument.  The challenged comments that are relevant in the present habeas action are the comments that Petitioner beat the victim while they were in the bathroom, which was not a charged crime.  Lastly, Petitioner

---

[9]    This motion is not included in the record before the Court; however, the State does not dispute that such a motion was filed and never ruled on.

argued that the prosecutor intimidated Bell to perjure himself at trial with regard to details of the killing. Resp. Ex. G at 72-94.

At an evidentiary hearing on the post-conviction motion, Bell testified that the prosecutor intimidated him into testifying about details in a way that was unfavorable to to Petitioner, most significantly that the victim had her hands clenched when Petitioner pointed the gun at her (and thus, presumably, could not have reached for the gun). Resp. Ex. H at 2-27. The prosecutor denied coercing false testimony from Bell. Petitioner and his mother both testified that defense counsel advised them that a motion for a new trial should not be filed because at a new trial Petitioner would likely get the death penalty. Petitioner testified that he wanted to appeal, and that he thought his lawyer intended to file an appeal. He testified that defense counsel did not explain to him that a motion for a new trial was necessary to preserve points for appeal. Resp. Ex. H at 28-37.

The motion court held that the prosecutor's statements, and the inferences he wished the jury to draw, related to Petitioner beating the victim in the bathroom were supported by the evidence. Resp. Ex. G. at 108. The court credited the prosecutor's denial of using any coercive tactics with Bell. In its background discussion of the case, the motion court found, based upon its observations at trial, as follows:

> [D]efense counsel at trial presented a competent defense concerning the issue of [Petitioner's] mental state. The record is clear that the defense strategy was to avoid the death penalty and secure conviction of a lesser-included offense. . . . The evidence presented at the postconviction motion hearing reflects no investigative step or trial tactic (other than the claims regarding voir dire, opening statement and closing argument noted above) that defense counsel should have employed to present a better defense. The strategy was not successful in avoiding a verdict of first degree murder, but it did succeed in preventing a death sentence.

Id. at 110.

The motion court found that defense counsel's concession in opening statement that Petitioner was responsible for the victim's "murder," was, in context, not a concession of murder in the first degree. Turning to Petitioner's specific claims of ineffective assistance of trial counsel, the motion court cited the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984) (holding that to constitute ineffective assistance of counsel under the Sixth Amendment, counsel's performance must have fallen below an objective standard of reasonableness, and such performance must have prejudiced the defendant in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). The motion court held that counsel was not ineffective for failing to object to the prosecutor's summary of the facts during voir dire, and to statements made during opening and closing argument. The court elaborated that during voir dire, the prosecutor "did not do more than acquaint the jury with the 'critical facts' of the case," as permitted by Missouri law, and thus any objection by defense counsel would have been properly overruled. The motion court further held that the facts as presented by the prosecutor were supported by at least arguable inferences from the evidence, and would not have caused the jury to ignore the evidence and instructions. Even assuming that defense counsel could have objected successfully to the challenged prosecutorial comments, and even assuming that defense counsel "should have been more oblique in discussing his client's responsibility for the death," the court concluded that Petitioner suffered no prejudice from these errors, as the result of the trial would have been the same anyway. Resp. Ex. G at 107-13.

The motion court then concluded that defense counsel's conduct with respect to the filing of a motion for a new trial constituted deficient performance under <u>Strickland</u>. The court credited the testimony of Petitioner and his mother on this matter, and held that counsel gave incorrect advice, because under Missouri law, Petitioner would not have faced the death penalty were he granted a new trial. But the motion court concluded that Petitioner did not establish that he was prejudiced by counsel's performance. The motion court distinguished state cases which held that a criminal defendant is presumed to suffer prejudice where defense counsel does not file a motion for a new trial or a notice of appeal. Here, the motion court noted, an appeal was filed, albeit limited to plain error review, and thus, prejudice was not to be presumed. Rather, Petitioner had to show "that there were otherwise preserved errors [at trial] that could have been the subject of appellate review, with reasonable likelihood of success," which he failed to show. <u>Id.</u> at 113-15. The court believed that this conclusion was supported by the United States Supreme Court case of <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 484 (2000), which held that to prevail on a claim of ineffective assistance of counsel for counsel's failure to file a notice of appeal, a habeas petitioner must show prejudice by showing a reasonable probability that but for counsel's deficient performance, petitioner would have appealed. This could normally be accomplished by showing that there were nonfrivolous grounds for appeal, but a pro se petitioner is not required to make such a showing. Rather he must just show that he would have appealed. "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him

to an appeal." <u>Roe</u>, 528 U.S. at 484-86.

The motion court concluded as follows:

Here the issue is not "waiver" of the motion for new trial and the appeal.
[Petitioner] testified that he wanted to appeal, and that his lawyer intended
to appeal. The issue is whether a new trial motion was in fact a necessary
predicate to a successful appeal. This in turn requires analysis of whether
there were nonfrivolous grounds for appeal, properly preserved, that should
have been raised in order to prosecute a successful appeal. The Court
concludes that the deficient performance of counsel, leading to
[Petitioner's] decision to acquiesce in omitting a motion for new trial, did
not prejudice [Petitioner], in that there has been no showing that, had
[Petitioner] received reasonable advice from counsel, he would have
insisted on the filing of a motion for a new trial and thereby preserved
viable issues for appeal. This record simply does not provide a basis to
undermine confidence in the result of the trial and appeal in [Petitioner's]
case.

Resp. Ex. G at 118.

On appeal from the denial of the motion for post-conviction relief, Petitioner

argued that the motion court erred in its disposition of the following three claims of

ineffective assistance of defense counsel: (1) inducing Petitioner to waive filing a motion

for a new trial, from which prejudice should have been presumed; (2) failing to object,

during the death-penalty qualification stage of voir dire, to the state's "inflammatory"

version of the facts, and then conceding in opening statement that Petitioner was

responsible for the murder; and (3) failing to object to the state's comment during closing

argument that Petitioner had beaten the victim while in the bathroom. Resp. Ex. I. The

appellate court summarily affirmed the lower court's denial of the motion for post-

conviction relief. Resp. Ex. K.

Petitioner's motion for rehearing and/or transfer to the Missouri Supreme Court

was denied on July 24, 2003.  Resp. Ex. L.

## DISCUSSION

## Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides for a one-year statute of limitations for the filing of a federal habeas petition by a state prisoner, with the limitations period beginning on the latest of four dates, including the date relevant here: the date on which the state conviction which the petitioner challenges "became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244 (d)(1)(A).[10]  This one year period is tolled during the pendency of a properly filed application for state post-conviction review; such an application is pending until the state appellate court mandate is issued.  Id. § 2244(d)(2); Lawrence v. Florida, 127 S. Ct. 1079, 1083 (2007); Payne v. Kemna, 441 F.3d 570, 572 (8th Cir. 2006).

Respondent's untimeliness argument is based upon the proposition that the one year limitations period began to run 15 days after the Missouri Court of Appeals denied

---

[10]    The other three dates are:

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner's motion for rehearing and/or transfer on May 17, 2000, the 15 days being the

time in which he could have filed a motion for transfer with the Missouri Supreme Court.

This would start the one-year period on June 1, 2000.  According to Respondent, when, as

here, a Missouri inmate does not file a motion for transfer with the Missouri Supreme

Court, following the affirmance of his conviction on direct appeal, and does not file a

petition for a writ of certiorari with the United States Supreme Court, he does not get the

benefit of the 90 days (presumably from the state appellate court's May 17, 2000 denial

of his motion for rehearing and/or transfer) in which he could have filed for certiorari

with the United States Supreme Court.  Without these 90 days, Respondent is correct that

Petitioner's habeas action is untimely.[11]

        After Respondent offered this argument for dismissal of the present action, the

Eighth Circuit Court of Appeals held in <u>Pierson v. Dormire</u>, 484 F.3d 486, 495 (8th Cir.

April 4, 2007), that a judgment is not final until the expiration of this 90-day period, even

if the petitioner did not file a motion for transfer with the Missouri Supreme Court

following affirmance of his conviction on direct appeal.  Accordingly, this Court asked

Respondent to file a supplemental pleading addressing any other reasons it had for why

_____

[11]    Starting the one-year period on June 1, 2000, 97 days elapsed until September 6,
2000, when Petitioner filed his motion for state post-conviction relief.  The one-year
period began to run again on August 15, 2003, when the state appellate court issued its
post-conviction mandate.  At that point, Petitioner had 268 days left to file a federal
habeas petition; the 268th day was Sunday, May 9, 2004, making the effective deadline
Monday, May 10, 2004.  But his petition was filed, at the earliest, on July 13, 2004, 64
days late.  With the 90 days in question taken into account, the one year began to run on
August 15, 2000 (90 days after May 17, 2000), and only 22 days lapsed until it was
tolled, giving Petitioner 343 days after tolling ended to file the habeas petition, or until
July 23, 2004.

the petition should not be granted. Respondent has now done so, and Petitioner has filed a supplemental traverse.[12] Meanwhile, on May 11, 2007, the Eighth Circuit vacated its panel opinion in <u>Riddle v. Kemna</u>, 8th Cir. No. 06-2542, a case relying on <u>Pierson</u>, and has set <u>Riddle</u> for argument before the Court en banc on September 26, 2007.

Although <u>Pierson</u> itself has not been vacated, this Court believes that the precedential value of <u>Pierson</u> at this point is very questionable, to say the least. If the Eighth Circuit en banc disagrees with the holding in <u>Pierson</u>, Respondent would be correct that the present habeas petition is barred by the statute of limitations. And equitable tolling would not be warranted. Assuming that equitable tolling applies in this context, to be entitled to such tolling, a habeas petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" <u>Lawrence</u>, 127 S. Ct. at 1085 (assuming without deciding that equitable tolling applies) (quoting <u>Pace v. DiGugliemo</u>, 544 U.S. 408, 418 (2005; <u>see also</u> <u>Kreutzer v. Bowersox</u>, 231 F.3d 460, 463 (8th Cir. 2000) (equitable tolling cannot be based on prisoner's ignorance of the law or inadequate legal assistance). Here Petitioner asserts that if his petition is determined to be untimely, he is entitled to equitable tolling due to the misinformation on the filing deadline that he received from the state Public Defender's office. This argument, however, is without merit. <u>See</u> <u>Lawrence</u>, 127 S. Ct. at 1085-86 (attorney miscalculation is not sufficient to warrant equitable tolling, even where the attorney is appointed by the state courts).

---

[12] Although the supplemental traverse was not timely filed, the Court has accepted and considered it.

The Court believes, however, that <u>Pierson</u> was correctly decided, in accordance with the general principle stated in <u>Curtiss v. Mount Pleasant Correctional Facility</u>, 338 F.3d 851 (8th Cir. 2003), that a judgment is final for these purposes at "the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition" for certiorari with the United States Supreme Court. <u>Curtiss</u>, 338 F.3d at 853. In light of the present uncertainty of the law on this matter in this Circuit, the Court will address the other arguments raised by Respondent for denial of habeas relief here.

## <u>Procedural Default</u> (Claims I, II(b), and VIII)

Respondent argues that Petitioner's claims I and II(b) regarding the lab report, and claim VIII asserting intimidation of Bell, were procedurally defaulted in state court in that they were not presented to the state appellate court in Petitioner's direct appeal, or on appeal from the denial of post-conviction relief. Respondent argues that federal habeas review of these claims is procedurally barred, because Petitioner has not presented a valid reason to excuse the defaults. This Court agrees.

Under the doctrine of procedural default,

[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

<u>Coleman v. Thompson</u>, 501 U .S. 722, 750 (1991). "Cause" under the cause and prejudice test "must be something external to the petitioner, something that cannot fairly

be attributed to him," for example, a showing that the factual or legal basis for a claim was not reasonably available, or that some interference by officials made compliance with the procedural rule impracticable.  Id. at 753 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  To show a miscarriage of justice in this context requires "new reliable evidence" that was not presented at trial and that makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  House v. Bell, 126 S. Ct. 2064, 2077 (2006); see also Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006).

A Missouri inmate procedurally defaults claims which could have been but were not raised on direct appeal, or on appeal from the denial of post-conviction relief. Interiano v. Dormire, 471 F.3d. 854, 856 (8th Cir. 2006); Osborne v. Purkett, 411 F.3d 911, 919 (8th Cir. 2005).  Here, the claims at issue were not pursued on direct appeal (even for plain error review) or on post-conviction appeal, and were thus procedurally defaulted.

To excuse the default with regard to the claim involving "fraud" by the prosecutor in introducing the incorrect lab report, Petitioner asserts that "there can be no independent and adequate state law ground that would serve a legitimate state interest in erecting a barrier to Federal Court review of fraud practiced directly upon the trial court by an officer of the court in a first degree murder trial."  Pet. at 2.  This assertion is unavailing. It does not explain why this matter, or the matter of the denial of Petitioner's motions for a blood sample and to endorse Dr. Lipman were not presented to the state appellate court on direct review.  See Greer v. Minnesota, ___ F.3d ___, 2007 WL 2002554, at *4 (8th Cir. July 12, 2007) (holding that cause to excuse the procedural default of a claim of

judicial bias was not shown by habeas petitioner's assertion that the affidavits he obtained to support the claim were unavailable until it was too late to present the claim to the state courts).  Nor does Petitioner's assertion show that a miscarriage of justice would occur if these defaulted claims were not reviewed.  The correct lab report was presented to the jury, and the jury was made well aware of the prosecution's mistake, and of the fact that Petitioner had been using cocaine and drinking prior to the crimes.  Furthermore, as Respondent explains, under Missouri law, evidence of voluntary intoxication is not admissible to show that a defendant could not deliberate as required for first-degree murder.  See Missouri v. Roberts, 948 S.W.2d 577, 588-90 (Mo. 1997) (en banc).  Although such evidence may have been admissible for another purpose, such as to show that Petitioner's conduct after the shooting was the result of impaired reasoning, see id. at 589, this does not satisfy the miscarriage of justice requirement.

With regard to the witness-intimidation claim, Petitioner offers no reason to excuse the default, and the Court discerns none.  Petitioner's assertion in his supplemental traverse, that Respondent waived any procedural default argument by choosing to raise initially only the statute of limitations argument, is without merit.  This Court has the discretion to consider a procedural default issue sua sponte.  See King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001).  In requesting supplemental briefing, the Court specifically asked Respondent to address all procedural and substantive issues in the case, besides the statute of limitations, and Petitioner was given the opportunity to respond to any and all arguments raised.  The Court will accordingly turn to consider Petitioner's remaining claims.

**<u>Standard of Review</u>**

Under AEDPA, when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. <u>Price v. Vincent</u>, 538 U.S. 634, 640 (2003); <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000); <u>Mark v. Ault</u>, ___ F.3d ___, No. 06-3476/3513, 2007 WL 2323944, at *8 (8th Cir. Aug. 16, 2007). A state court unreasonably applies clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Guinn v. Kemna</u>, 489 F.3d 351, 354-54 (8th Cir. 2007). A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be "unreasonable." <u>Colvin v. Taylor</u>, 324 F.3d 583, 587 (8th Cir. 2003) (under AEDPA, a writ of habeas corpus may not be granted "unless the relevant state court decision is <u>both</u> wrong <u>and</u> unreasonable"). "In other words, a federal court may not

overrule a state court for simply holding a view different from its own." <u>Mark</u>, 2007 WL 2323944, at * 11 (citation omitted).

The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to "an even more deferential review." <u>Kinder v. Bowersox</u>, 272 F.3d 532, 538 (8th Cir. 2001). Factual findings by the state court "shall be presumed to be correct," a presumption that will be rebutted only by "clear and convincing evidence." <u>Id.</u>; § 2254(e)(1). "The standard is demanding but not insatiable; . . . deference does not by definition preclude relief." <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005). Recently, in <u>Fry v. Pliler</u>, 127 S. Ct. 2321, 2327 (2007), the Supreme Court explained that the more lenient "substantial and injurious effect" standard, rather than the "harmless beyond a reasonable doubt" standard, applied when assessing the prejudicial impact of a federal constitutional error in a state criminal trial.

## <u>Trial Counsel's Failure to File a Motion for a New Trial</u> (Claim VII)

Petitioner claims that his constitutional right to the effective assistance of trial counsel was violated by counsel's failure to file a motion for a new trial, or put another way, by counsel's inducing Petitioner to agree that counsel should not file such a motion. As noted above, the motion court (and the state appellate court in affirming the motion court), applied <u>Strickland v. Washington</u>, and determined that counsel's performance was deficient. The state courts determined, however, that Petitioner also had to show prejudice, and found that he did not do so because the outcome of the trial and appeal would not have been different even had a motion for a new trial been filed. In essence, this amounts to a determination that even if the claims raised on direct appeal had not been limited to plain

error review, none would have warranted a reversal of the convictions or the grant of a new trial.[13]

Upon review of the entire record, the Court concludes that the state courts' adjudication of this claim was not contrary to, and did not involve an unreasonable application of clearly established federal law.  With regard to the determination that Petitioner had to show prejudice, as opposed to prejudice being presumed in this situation, there is no clearly established Supreme Court precedent to the contrary.  The state courts' further determination that to show prejudice, Petitioner had to show that the trial court would have granted a new trial or that the result of the appeal would have been different, is also not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  The holding in Roe, which involved the failure of counsel to file a notice of appeal, is not applicable. Here, counsel filed a notice of appeal and Petitioner pursued an appeal.  The situation presented here is not that different from the more common claim that defense counsel was ineffective for failing to include a particular point in a timely-filed motion for a new trial. In such a case, prejudice is not presumed; rather the petitioner must show that had the claim been included, the petitioner would have received a new trial by the trial court or would have prevailed on appeal on the properly preserved claim.  See McReynolds v. Kemna,

---

[13]    The Court does not fully understand the motion court's statement, quoted above, that Petitioner did not show prejudice because he did not show that had he "received reasonable advice from counsel, he would have insisted on the filing of a motion for new trial, and thereby preserved viable issues for appeal."  Resp. Ex. G at 118.  But it is clear that the state courts held that a showing of prejudice in this context required a showing that the result of the trial or appeal would have been different.

208 F.3d 721, 723 (8th Cir. 2000).

In addition, this Court concludes that the state courts' holding that Petitioner did not make the requisite showing of prejudice was not based on an unreasonable determination of the facts in light of the evidence presented at trial. As support for the Court's conclusion, the Court will briefly analyze the relevant claims raised on direct appeal.

<u>Sufficiency of the Evidence</u>

Petitioner argued that his due process rights were violated because there was insufficient evidence from which the jury could have found beyond a reasonable doubt that he deliberated, an element, under Missouri law, of first-degree murder; or that his sexual intercourse with the victim was by use of forcible compulsion, an element, under Missouri law, of rape. The due process clause prohibits the conviction of an accused "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>In re Winship</u>, 397 U.S. 358, 364 (1970). Under Missouri law, a person commits first-degree murder if he "knowingly causes the death of another person after deliberation upon the matter." Mo. Rev. Stat. § 565.020.1. Deliberation is defined as "cool reflection for any length of time no matter how brief." <u>Id.</u> § 565.002(3). Here the evidence that Bell and King told Petitioner to put the gun down after they saw that he had picked it up, that Petitioner told the victim to stand up, that he pointed the gun at her head, that the victim asked him to stop, and that Petitioner then racked the gun, and pulled the trigger was sufficient to show deliberation. Even under the general standard of review, this claim was without merit.

A person commits the crime of rape, under Missouri law, "if he has sexual

intercourse with another person by the use of forcible compulsion." Mo. Rev. State. 566.030.1. "Forcible compulsion" is defined as "(a) Physical force that overcomes reasonable resistence; or (b) A threat, expressed or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of himself or another person. Id. § 556.061(12). Here it is undisputed that Petitioner and the victim had sexual intercourse in the bathroom. Petitioner argues that the medical examiner's testimony that there was no evidence of injury, other than the gunshot wound, or of trauma to the victim's genitalia, establishes that there was insufficient evidence of rape. The Court disagrees. The evidence surrounding the victim and Petitioner's entering and exiting the bathroom, and the evidence that King heard the victim screaming for help when the victim was in the bathroom with Petitioner, was sufficient for a jury to find forcible compulsion.

Mistake Concerning the Lab Report

On direct appeal, Petitioner argued that the trial court erred in failing sua sponte to instruct the jury to disregard the lab report that did not pertain to Petitioner, and that his due process rights to a fair trial were violated because the trial court did not do so. This claim lacks any merit, as the jury was clearly made aware that the correct lab report showed that Petitioner's blood, taken shortly after the crimes, tested positive for cocaine and alcohol.

Court's Response to Jury's Question

Also without any merit is Petitioner's claim of trial court error, and resulting denial of due process, as a result of the written answer the court gave to the jury in response to the jury's question. The response, to which counsel for both sides assented, advised the jury that the court would accept a unanimous verdict on any count, and simply referred the jury

to the instruction telling them that they should return a separate verdict as to each count. It was in no way coercive or suggestive that the jury should return guilty verdicts on the rape and related armed criminal action counts.

In sum, the Court concludes that even had Petitioner not been limited to plain error review of the claims he raised on direct appeal, he would not have prevailed on any of the claims. Thus, the Court concludes that the state courts' finding of no prejudice from defense counsel's failure to file a motion for a new trial was not factually or legally unreasonable.

## Claims II(a), III, IV, and V

The same four claims that Petitioner raised in his direct appeal discussed above, are now raised again by Petitioner as grounds for federal habeas relief. It is fair to assume from the record, that these claims were reviewed by the state appellate court only for plain error. There is a split within the Eighth Circuit with respect to plain error review on direct appeal and procedural bar. One line of cases stands for the proposition that "a properly limited plain error review by a state court does not cure a procedural default." See, e.g., Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996). Another line of cases holds that when a state court conducts plain error review, a federal habeas court may also do so. See, e.g., Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000); Burns v. Gammon, 173 F.3d 1089, 1095 (8th Cir. 1999) (noting the spilt of authority); Mack v. Caspari, 92 F.3d 637, 641 (8th Cir. 1996). Under this standard, a federal court "will grant habeas relief only if 'manifest injustice resulted' from the alleged errors." Mack, 92 F.3d at 641. AEDPA's deferential standard of review would also be applicable in this situation. James v.

Bowersox, 187 F.3d 866, 869 (8th Cir. 1999) (noting that this is the proper standard even when the state appellate court issued a summary decision on plain error review).

Even assuming that plain error review by this Court were appropriate, this Court's above review of these five claims for substantive merit in the context of Petitioner's ineffective assistance of counsel claim, leads the Court to conclude that none of the alleged errors resulted in manifest injustice, and that Petitioner is not entitled to habeas relief on any of them.  See Tyler v. Steele, 2006 WL 3197349, at *5 (E.D. Mo. Nov. 2, 2006) (holding that court need not decide whether claims that state appellate court reviewed for plain error were procedurally defaulted or whether plain error review by the federal habeas court of them was appropriate, because the claims lacked substantive merit).

**Ineffective Assistance of Trial Counsel for Failing to Object to Prosecutorial Comments Referencing an Uncharged Crime (Claim VI)**

In this claim, Petitioner asserts that his trial counsel was constitutionally ineffective for failing to object to the prosecutor's comments in opening and closing statement that Petitioner beat the victim while they were in the bathroom, which was an uncharged crime. The state courts found that the evidence supported the prosecutor's statements, and that even assuming that defense counsel could have objected successfully to the challenged prosecutorial comments, Petitioner suffered no prejudice, as the result of the trial would have been the same anyway.  This Court finds no legal or factual error in this determination.  Both Bell's and King's testimony support the prosecutor's statements, and Petitioner does not dispute that there were blood stains on the wall of the bathroom about six feet from the floor.  This Court cannot say that the prosecutor's statements that

Petitioner beat the victim in the bathroom affected the results of the trial on the charged offenses.

## Ineffective Assistance of Trial Counsel for Failing to Object to State's Voir Dire Review of the Facts (Claim X)

Petitioner argues that his trial attorney was constitutionally ineffective for failing to object to the State's rendition of the facts during the death-qualification phase of voir dire. The state courts found that the prosecutor just presented the critical facts of the case, as permitted under Missouri law, and that thus any objection by defense counsel would have properly been overruled. The court further found that even had there been a successful objection, the result of the trial would have been the same. Upon review of the record, the Court concludes that these findings by the state courts were not factually unreasonable, nor did they involve a misapplication of Strickland. See James, 187 F.3d at 870 (holding that state post-conviction court's conclusion that petitioner was not prejudiced by trial counsel's failure to object to improper comment by the prosecutor during closing argument that petitioner was "slime" was a reasonable application of Strickland).

## CONCLUSION

The Court concludes that Petitioner is not entitled to habeas corpus relief. The Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2253(c)(2). See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000) (setting forth the standard for issuing a Certificate of Appealability); Langley v. Norris, 465 F.3d 861, 862-63 (8th Cir. 2006) (same).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the petition of Jerry Brandon for habeas corpus relief be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability not be issued in this case.

The parties are advised that they have ten (10) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that the failure to file timely objections may result in a waiver of the right to appeal questions of fact.


_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of August, 2007.